## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Kallys Albert Sr.,                                    Case No. 18-cv-113 (SRN/ECW)

        Plaintiff,

    v.                                                **REPORT AND RECOMMENDATION**

GEICO General Insurance Company and
John Doe,

        Defendant.

---

This matter is before the Court on Defendant GEICO General Insurance

Company's ("GEICO" or "Defendant") Motion to Dismiss (Dkt. No. 15) and Plaintiff

Kallys Albert Sr.'s ("Albert" or "Plaintiff") Motion to Strike (Dkt. No. 33). The case has

been referred to the undersigned United States Magistrate Judge for a report and

recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated

below, the Court recommends that the Motion to Dismiss be granted and the Motion to

Strike be denied.

## I.        BACKGROUND

This case involves a dispute between Albert and GEICO, Albert's former auto

insurance company, regarding automobile insurance policy number 4221139373. (Dkt.

No. 1 at 2.)[1] This is not the first time Albert has brought his dispute with GEICO to

---

[1]        Not all of the paragraphs in the Complaint are numbered. The Court uses
paragraph numbers when possible, and page numbers if the referenced content is not in a
numbered paragraph.

federal court.  In May 2017, Albert filed an action in this District alleging that GEICO had improperly modified its coverage of his and his family's vehicles, failed to refund or applied over-payments, and failed to properly handle his claims.  *Kallys Albert Sr. v. GEICO, GEICO General Insurance Company, John Doe*, Case No. 17-cv-1697 (DWF/BRT) (D. Minn. May 22, 2017) ("*Albert I*"), Dkt. No. 1.  That case was dismissed without prejudice for lack of subject matter jurisdiction.  *Id.*, Dkt. No. 42.  On January 16, 2018, Albert filed the instant Complaint.

## A.      Albert's Earlier Case (*Albert I*)

In *Albert I*, Albert alleged that GEICO had improperly modified his coverage of his and his family's vehicles, failed to refund or applied over-payments, and failed to properly handle his claims.  *See generally Albert I*, Dkt. No. 1.  Albert alleged eight causes of action, including breach of contract, negligent misrepresentation, declaratory judgment, specific performance, unjust enrichment, violation of the Fair Credit Billing Act, bad faith, and loss of consortium/contractual interference with third party relationship.  *Id.* at 7-11.  Albert did not allege a specific monetary amount in his request for damages.  *See generally id.*  He also did not allege racial discrimination or his race in that complaint.  *See generally id.*

On October 10, 2017, Magistrate Judge Becky R. Thorson issued a Report and Recommendation ("R&R") recommending that *Albert I* be dismissed for lack of jurisdiction.  *Albert I*, Dkt. No. 37.  Judge Thorson found that there was no federal question jurisdiction because Albert's only federal claim, "Violation of Fair Credit Billing Act," was not valid since GEICO is undisputedly not a creditor and did not extend

2

credit to Albert. *Id.* at 5-6. Judge Thorson also found diversity jurisdiction lacking because Albert had not suffered damages exceeding $75,000 caused by GEICO. *Id.* at 8-10. Although Albert asserted entitlement to $5.4 million in opposing GEICO's motion to dismiss (based on a summation of the policy limits for the insurance coverage that Albert previously had under his GEICO policy), she found the estimation of damages was completely unrealistic because Albert did not allege accidents or losses entitling him to such policy limits. *Id.* at 7. To the contrary, Judge Thorson found that even if GEICO refunded every penny paid by Albert over the previous seven years (most of which was not at issue), the amount in controversy would be $46,528—below the "greater than $75,000" amount-in-controversy requirement for diversity jurisdiction. *Id.* at 9.

On December 5, 2017, District Judge Donovan W. Frank adopted the R&R and dismissed *Albert I* without prejudice for lack of subject matter jurisdiction.[2] *Albert I*, Dkt. No. 42. Albert did not appeal that dismissal.

**B.    The Instant Case**

On January 16, 2018,[3] Albert filed his Complaint in this action, naming GEICO and John Doe as Defendants. (Dkt. No. 1.) The bulk of the allegations are nearly

---

[2]    Albert apparently disagrees with the decision dismissing the *Albert I* Complaint for lack of subject matter jurisdiction. (Dkt. No. 29 at 25.) However, he did not appeal that decision. The Court has reviewed the R&R and the Order adopting that R&R. The Court recommends granting GEICO's motion to dismiss and denying Albert's motion to strike based on its independent review of the facts and claims in this action, but notes that it agrees with the reasoning set forth in Judge Thorson's R&R and Judge Frank's Order.

[3]    The Complaint is dated January 12, 2018, but it was received and docketed on January 16, 2018.

identical to those in the *Albert I* complaint.[4]  In addition, the instant Complaint contains

four categories of new allegations.  First, Albert alleges that he is "a black male, 65 years

old."  (Dkt. No. 1 ¶ 7.)  Second, Albert includes factual matter that occurred after he filed

the *Albert I* complaint—namely that "GEICO published that [Albert's] automobile

insurance policy lapsed on May 27, 2017; that it cancelled the Policy due to non-payment

of premium rates."  (*Id.* at 3-4.)  Third, Albert made several general allegations of racial

bias and discrimination, including that "[t]he aggregate effect of GEICO's acts and

conducts based and motivated by racial animus, its deliberate, indifference and reckless

disregard to Plaintiff's legal and civil protected rights and placed him in a dissimilar

circumstances [sic] with persons of a different race—Caucasians; whom GEICO would

never have treated similarly."  (*Id.* at 4.)  Fourth, Albert repeatedly alleged that his

damages are "in the excess of not less than $75,000, and a maximum of $5,000.000. 00

[sic] the face value of the total insured vehicles."  (*E.g.*, *id.* ¶¶ 40, 44, 47, 54.)

In his Complaint, Albert recycles aspects of his breach of contract and declaratory

judgment claims from *Albert I*.  (*Compare* Dkt. 1, Counts III and IV, *with Albert I*, First

Cause of Action and Third Cause of Action.)  He also asserts new claims under 42 U.S.C.

---

[4]    For example, the complaint in *Albert I* and the instant Complaint contain nearly
identical paragraphs describing the alleged overbilling.  *Compare Albert I*, Dkt. No. 1 ¶¶
8-28, *with* Dkt. No. 1 ¶¶ 8-28.  The instant Complaint adds a table identifying the
vehicles and coverage limits and/or deductibles at issue (*see* Dkt. No. 1 at 3), along with
a summary of "GEICO'S PATTERN AND CUSTOM OF DISTINCT BREACHES,
FRUSTRATING AND PREVENTING CONTRACT PERFORMANCE" that
incorporates some of the allegations regarding overbilling, alleges that GEICO retaliated
against Plaintiff for filing *Albert I*, and generally alleges that GEICO's conduct was based
on "invidious racial animus" (Dkt. No. 1 at 3-4).

§ 1981[5] (Counts I and II) and new state law claims for breach of the implied duty to deal with insured in good faith (Count III), unlawful conversion of funds (Count IV), invasion of privacy by false light publicity (Count VI), and tortious interference with contractual relationship with third part(ies) (Count VII).[6]  (*Id.* at 9-14.)  Albert alleges both federal question and diversity jurisdiction.  (Dkt. No. 1-1.)  Finally, Albert alleges that GEICO's arguments in *Albert I* somehow interfered with his right to a jury trial under the Seventh Amendment and denied him "Due Process of the law," although he did not assert a specific claim or count based on those allegations.[7]  (*See* Dkt. No. 1 at 4.)

## C.    The Present Motions

### 1.    GEICO's Motion to Dismiss

GEICO moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim on which relief may be granted.  (Dkt. No. 16.)  GEICO characterizes its 12(b)(1) challenge as a factual challenge to subject matter jurisdiction, arguing that evidence presented by GEICO establishes that Albert has not suffered damages in excess of $75,000, and therefore there is no diversity jurisdiction over the state law claims.  (Dkt. No. 18 at 16.)

---

[5]    In his Complaint, Albert does not specify which title of the United States Code his § 1981 claims refer to, but from the allegations he appears to be claiming GEICO interfered with his right to make and enforce contracts based on race, pursuant to Title 42 of the United States Code.

[6]    There is no Count V.

[7]    Albert does, however, assert the Seventh Amendment as a basis for federal question jurisdiction.  (Dkt. No. 1 ¶ 4.)

GEICO argues that Albert has not properly pleaded his § 1981 claims, and therefore there is also no federal question jurisdiction. (*Id.* at 20.) In the alternative, GEICO argues that Albert's Complaint should be dismissed under Rule 12(b)(6) because it does not contain sufficient facts that plausibly allege Albert's claims. (*Id.* at 21.) GEICO asks the Court to dismiss the case with prejudice "such that the Plaintiff may not refile this matter again at a later date." (*Id.* at 12.)

      **2.**      **Albert's Motion to Strike**

Albert filed a motion to strike, which he states is "Pursuant to Federal Rule of Civil Procedure 12(f), and other applicable laws," seeking the following relief:

> **1. STRIKE AND DISMISS DEFENSE MOTION FOR ABUSE OF PROCESS**
> **2. DISMISS FOR FAILURE TO STA[T]E LEGAL DEFENSE AND INTENTIONAL MISREPRESENTATION TO THE COURT**
> **3. SANCTION ATTORNEY OF RECORD, PETER M. LINDBERG**

(Dkt. No. 33 at 1.) In support of his motion, Albert filed a 37-page memorandum of law and a 17-page reply memorandum, along with an affidavit in support of his motions and numerous exhibits.[8] (Dkt. Nos. 30, 35, 37, 41, 44.) Based on its review of these memoranda, the exhibits, and the affidavit, the Court understands Albert to be arguing that an alleged "ex parte consultation with Court staff" that occurred in connection with GEICO filing a letter on January 25, 2018 opposing Albert's *in forma pauperis*

---

[8]      The affidavit bears the *Albert I* case number and was docketed as entry number 44 in the *Albert I* action by the Clerk's Office, but since has been re-docketed in this action as entry number 44 because it is titled as an "Affidavit of Kallys Albert in Support of His Motion to Strike and Dismiss GEICO's Motion to Dismiss" and was filed on August 23, 2018, during the briefing on these motions.

application was improper, that GEICO improperly referenced a 2012 R&R from another case describing Albert's litigation history in the January 25 letter, that GEICO has generally abused the litigation process, and that GEICO's counsel should be sanctioned for alleged misrepresentations made in support of GEICO's motion to dismiss and for arguing for dismissal of Albert's Complaint. (*See generally* Dkt. Nos. 33, 35.)

## II.    LEGAL STANDARD

### A.    Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted). Thus, subject matter jurisdiction "is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge whether the court has subject matter jurisdiction to hear the matter. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008). When considering a Rule 12(b)(1) motion, a district court may consider matters outside the pleadings. *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

"Typically, complaints need only allege the jurisdictional amount in good faith and will be dismissed only if it 'appear[s] to a legal certainty that the claim is really for

less than the jurisdictional amount.'  However, '[i]f the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence.'" *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, --- F.3d ---, 2019 WL 80707, at *2 (8th Cir. Jan. 3, 2019) (quoting *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010)) (alteration in original).  "'[I]f, *from the face of the pleadings* it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed *or if, from the proofs*, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.'" *Sanders v. Hiser*, 479 F.2d 71, 73 (8th Cir. 1973) (emphases and alteration in original) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

When deciding a Rule 12(b)(1) motion, the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn*, 918 F.2d at 729 n.6 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In contrast, in a factual attack, the court "inquires into and resolves factual disputes," *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002), and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.  The nonmoving party in a factual challenge does not enjoy the benefit of Rule 12(b)(6) safeguards.  *Id.*

8

**B.    Pleading Standard under Rule 12(b)(6)**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, when deciding a Rule 12(b)(6) motion, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court

9

complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," or "specific facts" that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," and it need not "conjure up unpled allegations" to save a complaint.

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (citations and internal quotation marks omitted). *Pro se* complaints are construed liberally, but they still must allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

While matters "outside the pleadings" may not be considered in deciding a Rule 12(b)(6) motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached

to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## C.    Motions to Strike Under Rule 12(f)

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are not authorized by the Federal Rules of Civil Procedure or the local rules of this Court, except when they target a pleading. *Zellner-Dion v. Wilmington Fin., Inc.*, Case No. 10-cv-2587 (PJS/JSM), 2012 WL 2952251, at *1 n.1 (D. Minn. July 19, 2012).

## III.    DISCUSSION

The Court first addresses Albert's motion to strike GEICO's motion to dismiss. Then, regarding GEICO's motion to dismiss, there are two potential avenues to subject matter jurisdiction: (1) federal question jurisdiction over the federal claims and supplemental jurisdiction over the state law claims or (2) diversity jurisdiction. *See Auto-Owners Ins. Co. v. Tribal Ct. of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1021 (8th Cir. 2007). Accordingly, the Court considers whether Albert's federal claims under 42 U.S.C. § 1981 and his allegations regarding the Seventh Amendment state a plausible claim for relief. Finding they do not state a plausible claim, the Court then considers whether Albert's state law claims satisfy the requirements for diversity jurisdiction.

**A.      Albert's Motion to Strike GEICO's Motion to Dismiss**

Albert moves to strike GEICO's motion to dismiss under Rule 12(f).  (Dkt. No. 33.)  A motion to strike another motion is not permitted under the Federal Rules of Civil Procedure nor the Local Rules.  *See Zeller-Dion*, 2012 WL 2952251, at *1 n.1.  "Moreover, given that a party can always, in its brief on the merits, simply ask the Court to disregard a document filed by the party's opponent, formal 'motions to strike' serve no purpose other than to crowd the docket and circumvent court rules limiting the number and length of memoranda."  *Id.*  Here, Albert's "motion to strike" is also captioned as a "countermotion" to GEICO's motion to dismiss (Dkt. No. 33), suggesting that Albert has used his motion to strike to repeat arguments made in his opposition to GEICO's motion to dismiss and make additional or lengthier arguments in opposition to GEICO's motion to dismiss.  The Court recommends denial of Albert's motion to strike as procedurally improper and because, as explained below, the Court recommends dismissal of Albert's claims.  However, because Albert is a *pro se* litigant, the Court has considered Albert's memoranda, affidavit, and exhibits in connection with his opposition to GEICO's motion to dismiss.[9]  Albert is reminded that in the future he must comply with the Federal Rules

---

[9]      Albert argues at the end of his opening brief in support of his motion to strike that the Court should grant summary judgment in his favor.  (*See* Dkt. No. 35 at 30.)  While Rule 12(d) permits a Rule 12(b)(6) or Rule 12(c) motion to be converted to a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court," the Court has not considered matters outside the pleadings when considering GEICO's motion under Rule 12(b)(6).  To the extent the Court has referenced or relied on documents not attached to the Complaint, those documents are the pleadings and other public filings in *Albert* I, and thus are necessarily embraced at least by the Complaint's assertion of "False Light Publicity" based on GEICO's statements in *Albert I*.  Moreover,

of Civil Procedure and the Local Rules notwithstanding his *pro se* status, including Local Rule 7.1 limiting the length of a party's memorandum of law.  *See Lindstedt v. City of Granby*, 238 F.3d 933, 937 (8th Cir. 2000); D. Minn. L.R. 7.1(f).

**B.     Albert's § 1981 Claims Should Be Dismissed for Failure to State a Claim**

Albert asserts two claims under § 1981.  First, Albert asserts that "GEICO had with deliberate, indifference and recklessness to Plaintiff's civil and legal rights systematically denied and deprived Plaintiff the protection and guarantee to make and enforce the parties' automobile insurance contractual relationship."  (Dkt. No. 1 at 9.) Second, Albert alleges that "GEICO intentionally in deliberate, indifference and reckless disregard for Plaintiff's legal and civil rights to make and enforce contracts retaliated, and terminated the automobile contract in violation of protections afforded Plaintiff under applicable Section §1981 [sic] (a) and (b) of the United States Laws."  (*Id.* at 11.)

GEICO moves to dismiss the § 1981 claims under Rule 12(b)(6).[10]  (Dkt. No. 18 at 20-27.)  For the reasons stated below, the Court recommends dismissal of Albert's § 1981 claims for failure to state a claim.

_____

Albert has not brought any Rule 12 motion that could be converted into a motion for summary judgment, rendering his request for conversion procedurally improper.

[10]     GEICO also makes a cursory argument that the Court lacks subject matter jurisdiction over those claims because they were not properly pleaded.  While the Court recommends dismissal of the § 1981 claims under Rule 12(b)(6), the Court does not find the claims so "frivolous on [their] face" as to deprive the Court of federal question jurisdiction. *See Contl. Cablevision of St. Paul, Inc. v. U.S. Postal Serv.*, 945 F.2d 1434, 1439 (8th Cir. 1991).

1.      **Denial of Right to Make and Enforce Contractual Relationship Claim**

Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. "To state a claim under § 1981, a plaintiff must plead: '(1) that [the plaintiff] is a member of a protected class; (2) that [the defendant] intended to discriminate on the basis of race; and (3) that the discrimination on the basis of race interfered with a protected activity as defined in § 1981.'" *Elmore v. Harbor Freight Tools USA, Inc.*, 844 F.3d 764, 766 (8th Cir. 2016) (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)). The dispute here focuses on the second prong—that of intentional racial discrimination— because Albert alleged he is a member of a protected class, namely, "a black male" (Dkt. No. 1 ¶ 7) and that GEICO interfered with his existing contractual rights and the creation of his contractual relationship with GEICO (*see id.* ¶¶ 32-40), which are protected activities under § 1981, *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006).

In proceeding with the Rule 12(b)(6) analysis, the Court accepts all factual allegations as true. *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Here, the Complaint alleges that GEICO's conduct was motivated by racial animus (*e.g.*, Dkt. No. 1 at 4), that "[t]hroughout the duration of the parties' contractual relationship, GEICO intentionally, and willfully provided Plaintiff discriminatory

14

premium rates" (*id.* ¶ 29), that "GEICO retaliated by intentional termination of the

contractual relationship on May 31, 2017, in violation of protections afforded Plaintiff

under applicable Section §1981 [sic]" (*id.* ¶ 32), and that "[t]he aggregate effect of

GEICO's acts and conducts based and motivated by racial animus, its deliberate,

indifference and reckless disregard to Plaintiff's legal and civil protected rights and

placed him in a dissimilar circumstances [sic] with persons of a different race—

Caucasians; whom GEICO would never have treated similarly" (*id.* at 4).  After

application of the rules set forth in *Iqbal* and *Twombly*, the Court finds that Albert's

allegations of intentional racial discrimination are conclusory and do not state a plausible

claim for relief.

In *Iqbal*, the Supreme Court rejected an attempt to allege discriminatory intent as

insufficient under Rule 8 because "the Federal Rules do not require courts to credit a

complaint's conclusory statements without reference to its factual context."  556 U.S. at

686.  The *Iqbal* complaint alleged that the defendants "adopted a policy because of, not

merely in spite of, its adverse effects upon an identifiable group."  *Id.* at 681 (citations

omitted).  The Supreme Court noted that it did "not reject these bald allegations on the

ground that they are unrealistic or nonsensical," but because of the "conclusory nature of

respondent's allegations."  *Id.*  The complaint did "not contain any factual allegation

sufficient to plausibly suggest petitioners' discriminatory state of mind."  *Id.* at 683.

Rather, the respondent—who alleged discrimination "on account of [his] religion, race,

and/or for no legitimate penological interest"—had done no more than "plead the bare

elements of his cause of action."  *Id.* at 686-87.

15

page

Similarly, in a recent § 1981 opinion issued by the Fifth Circuit, *Body by Cook, Inc. v. State Farm Mutual Automobile Insurance*, the plaintiff automotive repair shop, Body by Cook, alleged that insurance companies discriminated against the shop's owner on the basis of race by refusing the shop access to the insurance companies' direct repair programs in violation of § 1981. 869 F.3d 381, 384 (5th Cir. 2017). The complaint alleged that, "despite their qualifications, [plaintiff shop and its owner] have been refused entry into the [Direct Repair Programs,] and lesser qualified or similarly situated, non-minority owned body shops have been granted access." *Id.* The Fifth Circuit held that those were "only generalized allegations regarding Defendants' alleged disparate treatment of Body by Cook versus non-minority-owned shops." *Id.* at 387. "These allegations [we]re not specific enough to plead discriminatory intent. They fail[ed] to identify which Defendant discriminated or specific instances when Body by Cook was refused a contract but a similarly situated non-minority owned body shop was given a contract." *Id.* In contrast, with respect to State Farm, the allegations were sufficient where the complaint alleged that "a State Farm representative visited and inspected Body by Cook and found that it met all of State Farm's qualifications for being a Direct Repair Shop, but that State Farm declined to allow Body by Cook to participate in the Direct Repair Program" and that State Farm "admitted a non-minority-owned body shop with inferior equipment that did not meet State Farm's 'qualifications.'" *Id.* Those additional factual allegations "ma[d]e plausible the inference that the difference in treatment was because of Body by Cook's minority-owned status." *Id.*

Here, like the insufficient allegations in *Iqbal* and *Body by Cook*, Albert's conclusory allegations are unsupported by any other alleged facts that support an inference of intentional discrimination. Such "minimal references [to Albert's] race amount to, at most, threadbare recitals of the elements of [his] race discrimination claims that fail to meet the plausibility standards in *Iqbal* and *Twombly*." *See Equal Empl. Opportunity Comm'n v. JBS USA, LLC*, 8:10CV318, 2016 WL 4435198, at *11 (D. Neb. Aug. 19, 2016), *as amended*, No. 8:10CV318, 2016 WL 5173222 (D. Neb. Sept. 21, 2016). Albert's allegations do not explain or suggest how GEICO's conduct was motivated by racial animus or intentionally discriminatory, and "absent other facts that permit such an inference," his § 1981 claim should be dismissed for failure to state a claim.[11] *Id.* Accordingly, the Court recommends dismissing Albert's "Denial of Right to Make and Enforce Contractual Relationship" claim (Count I) under Rule 12(b)(6).

## 2.    Retaliation Claim

Albert also alleges a retaliation claim under § 1981. (Dkt. No. 1 at 11.) "[N]on-employment retaliation claims under § 1981 are exceedingly rare[.]" *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 564 (5th Cir. 2015). To plausibly allege a § 1981 non-employment retaliation claim, a plaintiff must allege facts establishing: "(1) he

---

[11]    The Court notes that GEICO's complained-of conduct is unchanged between *Albert I* and this action, but Albert did not allege any facts explaining why he now believes GEICO was motivated by racial animus or otherwise intentionally discriminating against him. Indeed, Albert raised the question of retaliation in *Albert I*, but did not identify a discriminatory motive at that time. *E.g.*, *Albert I*, Dkt. No. 20 at 12-13 (discussing "retaliatory cancellation").

engaged in activity protected by § 1981; (2) he was subjected to an adverse action; and

(3) a causal link exists between the protected activity and the adverse action." *Id.*

Based on the Complaint, the activity that Albert alleges caused GEICO to retaliate

is his filing of *Albert I*. (Dkt. No. 1 ¶ 37 (alleging termination of "automobile contract"

after he filed *Albert I*).) According to Albert, GEICO terminated his coverage and

published "private facts" because he filed that lawsuit. (*Id.* ¶¶ 37-38.) But, the filing of a

lawsuit for breach of contract, negligent misrepresentation, declaratory judgment, specific

performance, unjust enrichment, violation of the Fair Credit Billing Act, bad faith, and

loss of consortium—where there is no allegation that any of the complained-of conduct

was based on racial bias or discrimination—does not constitute "activity protected by §

1981." *See Zastrow*, 789 F.3d at 564. "[A] company's refusal to contract with someone

who has criticized its business and impugned its reputation is not illegal retaliation—so

long as that refusal is not a reprisal for a complaint of racial discrimination or an attempt

to support the complaint of another." *Id.*; *see also Gacek v. Owens & Minor Distrib.,

Inc.*, 666 F.3d 1142, 1146 (8th Cir. 2012) (finding § 1981 retaliation claim requires

retaliation due to activity protected by § 1981) (citing *Welzel v. Bernstein*, 436 F. Supp.

2d 110, 118 (D.D.C. 2006) ("Accordingly, courts have held that § 1981 protects activities

engaged in to vindicate the § 1981 rights of racial minorities, such as opposition to

racially discriminatory employment practices.")). Here, *Albert I* did not involve a

complaint of racial discrimination. In fact, it appears that the Complaint in this action is

the first time Albert has alleged racial discrimination or animus by GEICO.

Consequently, Albert's § 1981 retaliation claim fails because he has not alleged that he

engaged in any activity protected by that statute before his insurance coverage was cancelled on May 31, 2017.

Albert's § 1981 claim fails for other reasons. Albert alleges "adverse action" of either the publication of "private facts" (apparently in connection with GEICO's filings in *Albert I*) or cancellation of his coverage because he filed the *Albert I* litigation. (Dkt. No. 1 ¶¶ 37-38.) With respect to the the cancellation of his coverage, the Complaint admits that his second premium payment was due in April 2017, but indicates that Albert refused to pay the $750.57 that GEICO said was due because he disputed the amount.[12] (*Id.* ¶ 22.) Albert cannot plausibly allege a causal connection between *Albert I* and the cancellation of his insurance when he has not alleged that he made the second payment that would have resulted in continuation of his coverage.

As to the "private facts" allegedly published by GEICO, Albert does not explain to whom the facts were "published" (other than GEICO's arguments in *Albert I*) and the only facts identified by Albert as published were the nature of his "private contractual relationships with GEICO," i.e., the fact that he was no longer covered by insurance as of the end of May 2017 due to non-payment. (*Id.* at 13.) Albert publicly filed documents in July 2017 showing that his April 2017 payment of $750.57 was "PAST DUE" and that his policy had been "CANCELED" on May 31, 2017, *Albert I*, Dkt. No. 19 at 46-50, and stated: "On May 31, GEICO retaliated by cancelling the policy" in his public objections

---

[12]    Albert admitted in *Albert I* that he "vigorously disputed, rejected, and resisted" paying the $750.57. *Albert I*, Dkt. No. 20 at 10.

to Judge Thorson's R&R, *id.*, Dkt. No 38 at 9.[13]  Because the so-called "private facts" were earlier made public by Albert, he has failed to plausibly allege publication of "private facts" by GEICO.

"Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir. 1997)).  This is another reason why the Complaint does not plausibly allege a violation of § 1981, and is an alternative reason why the Court recommends dismissal of the § 1981 retaliation claim (Count II) under Rule 12(b)(6).

## C.    Albert's Seventh Amendment Argument

Although he did not assert a formal claim along these lines, Albert appears to assert that his right to a jury trial under the Seventh Amendment was violated because *Albert I* was dismissed for lack of subject matter jurisdiction without a jury trial.[14]  (*See* Dkt. No. 1 at 4; *see generally id.* at 30-31 (arguing that the question of "whether he can be entitled to [an] amount in the excess of the minimum. threshold requirement" "can only be made by the jury").)  It has long been held that the Court has the power to determine if it has subject matter jurisdiction without a jury.  *See, e.g.*, *Smithers v. Smith*,

---

[13]    The Court "may take judicial notice of the matters filed in this related case." *Donner v. Alcoa, Inc.*, 709 F.3d 694, 698 (8th Cir. 2013).

[14]    It is unclear whether Albert believes that GEICO somehow violated the Seventh Amendment, or whether it was the dismissal of his case on a Rule 12(b)(1) motion that allegedly violated the Seventh Amendment, but the Court need not address that issue here because Albert's claim fails under either circumstance.

204 U.S. 632, 645 (1907) ("[F]or the purpose of ascertaining the limits of the authority to dismiss summarily for lack of jurisdiction, the circumstance that, in this case, a jury was waived by the parties, is without significance, because, if the judge had authority to adopt this summary method, he could dispense with the jury whether the parties agreed to it or not."). Further, "[i]t is well settled that an otherwise proper ruling is not erroneous merely because it has the incidental effect of precluding a jury trial." *Perkins v. Spivey*, 911 F.2d 22, 28 (8th Cir. 1990) (citing *Fidelity & Deposit Co. of Md. v. United States*, 187 U.S. 315, 319-21 (1902)). Accordingly, to the extent Albert has asserted a claim under the Seventh Amendment, the Court recommends dismissal of any such claim under Rule 12(b)(6).

## D.    Albert's State Law Claims Should be Dismissed for Lack of Subject Matter Jurisdiction

GEICO also moved to dismiss under Rule 12(b)(1), alleging that the Court lacks subject matter jurisdiction over Albert's claims. GEICO has challenged the amount in controversy, asserting that Albert is unable to show he will ever be entitled to damages in excess of $75,000. (*See, e.g.*, Dkt. No. 18 at 13-20, Dkt. No. 32 at 4-6.) GEICO's attack is a factual attack on Albert's claim that he is entitled to damages in excess of $75,000 (Dkt. No. 18 at 16), which means that Albert does not enjoy the benefit of Rule 12(b)(6) safeguards, *Osborn*, 918 F.2d at 729 n.6. Further, because GEICO has challenged Albert's allegations of the amount in controversy, Albert "must establish jurisdiction by a preponderance of the evidence.'" *Am. Fam. Mut. Ins.*, --- F.3d ---, 2019 WL 80707, at *2.

21

Albert's state law claims arise from the same set of facts as those in *Albert I*—
disputes over which vehicles were covered by Albert's insurance policy with GEICO and
what premiums Albert owed to GEICO. Those allegations relate to Albert's "Common
Law Breach of Contract, and Breach of the Implied Duty to Deal with Insured in Good
Faith" claim (Count III) and "Unlawful Conversion of Plaintiff's Funds, and a
Declaratory Judgment" claim (Count IV). (Dkt. No. 1 ¶¶ 41-47.) The instant Complaint
also includes allegations relating to GEICO's cancellation of his policy in May 2017 after
his April 2017 non-payment and GEICO's arguments in *Albert I*. Those new allegations
appear to be intended to support Albert's state law "Invasion of Privacy by False Light
Publicity" claim (Count VI) and "Tortious Interference with Contractual Relationship
with Third-Part(ies)" (Count VII) claim. (*See id.* ¶¶ 48-58.) Having recommended
dismissal of the § 1981 claims and any Seventh Amendment claim, the Court turns to
whether the amount in controversy based on the state law claims exceeds $75,000,
exclusive of interest and costs.

The Court first considers the "False Light Publicity" state law claim, which the
Court understands to relate to GEICO's arguments in *Albert I* and possibly statements
that Albert's policy was cancelled for non-payment of premiums. Minnesota has
"decline[d] to recognize the tort of false light publicity." *Lake v. Wal-Mart Stores, Inc.*,
582 N.W.2d 231, 236 (Minn. 1998). Accordingly, any award of damages on this claim is

"legally impossible," and this claim cannot contribute to the amount in controversy.[15]
*See Garvey v. Prudential Ins. Co. of Am.*, 08-cv-0147 PJS/RLE, 2008 WL 1805603, at *2
(D. Minn. Apr. 18, 2008) (noting that legally impossible damages should not be
considered in determining the amount in controversy). Further, in response to GEICO's
challenge to Albert's allegations of the amount in controversy, Albert was required to
establish jurisdiction by a preponderance of the evidence. *See Am. Fam. Mut. Ins.*, ---
F.3d ---, 2019 WL 80707, at *2. Although Albert suggests he has had difficulty in
obtaining insurance coverage due to alleged statements by GEICO about his non-
payment of premiums, Albert did not quantify any damages arising from GEICO's
arguments in *Albert I* or statements that Albert's policy was cancelled for non-payment of
premiums, and therefore has not met his burden.

The "Tortious Interference" claim suffers from similar deficiencies. The Court
understands Albert to allege that continuous insurance coverage was required for a loan
to purchase his Mazda CX-9 and that GEICO's cancellation of the policy in May 2017
and claim of "non-payment of insurance premium" were "maliciously motivated,
intended to harm, and did harm the Plaintiff's contractual relationship with his lender."
(*See* Dkt. No. 1 ¶¶ 56-58.) Setting aside the Court's doubts about the validity of this
claim, Albert did not provide any evidence quantifying the non-specific harm (or even
explaining how the "contractual relationship" was damaged) in response to GEICO's

---

[15]    For this reason, the Court need not assign any monetary value to Plaintiff's request
for injunctive relief with respect to the "False Light Publicity" claim sought in paragraph
4 of the Prayer for Relief.

factual challenge to the amount in controversy. Thus, Albert has failed to meet his burden of with respect to this claim. *See Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) ("The party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence.") (citing *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 831 (8th Cir. 2005)).

Finally, the Court turns to Albert's remaining claims for "Common Law Breach of Contract, and Breach of the Implied Duty to Deal with Insured in Good Faith" (Count III) and "Unlawful Conversion of Plaintiff's Funds, and a Declaratory Judgment" (Count IV). As in *Albert I*, such contract-based claims are the "crux" of the Complaint.[16] *See Albert I*, Dkt. No. 37 at 8. In Minnesota, the measure of damages for a breach of contract claim is those damages flowing from the alleged breach. *See Wild v. Rarig*, 234 N.W.2d 775, 789 (1975).

Consistent with its arguments in *Albert I*, GEICO asserts that "the Plaintiff is complaining about $565.69 in alleged premium overcharges, a $250 deductible payment,

---

[16]    Although GEICO did not make this argument, the doctrine of *res judicata* may also apply to preclude Albert from relitigating the same claims that were already found insufficient in *Albert I*. In *Dozier v. Ford Motor Co.*, the Circuit Court of Appeals for the District of Columbia held that *res judicata* was appropriate where a plaintiff's complaint was previously dismissed as inadequate to satisfy the amount in controversy requirement even though the first dismissal was "without prejudice." 702 F.2d 1189, 1194 (D.C. Cir. 1983) (Scalia, J.) ("Because the doctrine of res judicata applies to dismissal for lack of jurisdiction as well as for other grounds, that determination bars the present suit in federal district court, at least to the extent appellant seeks to base jurisdiction on § 1332."); *see also Williams v. Capella U.*, 17-CV-0267 (DSD/FLN), 2017 WL 1155735, at *3 (D. Minn. Mar. 7, 2017) (citing *Dozier*, 702 F.2d at 1192) ("[T]he question of the court's subject-matter jurisdiction based on those allegations has already been decided unfavorably to Williams. The doctrine of *res judicata* precludes him from relitigating the issue in this District.").

24

as well as unitemized property damage and roadside assistance claims," and that "if

GEICO refunded *every single penny* of the Plaintiff's premiums over the last seven years

at the highest possible rate, ($2,908 per six-month period) the amount in controversy

would be $46,528.  This falls well short of the $75,000 amount in controversy threshold,

and ignores the fact that Mr. Albert paid for and received insurance coverage from

GEICO during that period."  (Dkt. No. 18 at 17 & n.4; *see also* Dkt. No. 8-1 (showing

six-month premium per vehicle as $2,908.80).)  Even though Judge Thorson and Judge

Frank found this unchallenged valuation persuasive in *Albert I*, Albert did not submit any

evidence to rebut GEICO's valuation in this action.  Accordingly, despite Albert's

unsupported assertion that he values his claims "in the excess of not less than $75,000,

and a maximum of $5,000.000. 00 [sic]," the Court finds that Albert simply has not

proven by a preponderance of the evidence that he has incurred over $75,000 in damages

attributable to GEICO.  *See Martin v. State Farm Fire & Cas. Co.*, 826 F. Supp. 2d 1133,

1133-38 (D. Minn. 2011) (no diversity jurisdiction where plaintiffs "proffered little

evidence to support their assertion that their damages exceed the jurisdictional

minimum").

        Rather than submitting evidence showing the damages resulting from his state law

claims, Albert again argues that the policy limits for the GEICO insurance at issue should

be the measure of damages, resulting in a proposed amount in controversy of over $5

million.  (*E.g.*, Dkt. No. 29 at 25-26.)  Albert does not assert that he was involved in an

accident or incident that would entitle him to such coverage.  Instead, he cites *In re*

*Minnesota Mutual Life Insurance Co. Sales Practices Litigation*, 346 F.3d 830, 835 (8th

Cir. 2003), for the proposition that the face value of the insurance policy should be the measure of the amount in controversy. (*Id.* at 25.) This argument fails to recognize key differences between the life insurance policies at issue in *Minnesota Mutual* and automobile insurance. In *Minnesota Mutual*, the plaintiffs held life insurance policies and had paid "all premiums through the 'vanishing date' allegedly represented to them by [defendant] in expectation of whole life coverage." 346 F.3d at 835. "Accordingly, if they would receive the equitable relief that they ha[d] requested, they would be due the face value of their policies upon their death, 'an event bound to happen.'" *Id.* (quoting *Guardian Life Ins. Co. of Am. v. Muniz*, 101 F.3d 93, 94 (11th Cir. 1996)). Here, Albert is not challenging a life insurance policy and would not be awarded the value of the automobile policy limits even if he won on his claims. Accordingly, *Minnesota Mutual* does not stand for the proposition that the policy limits of the GEICO policy are the measure of damages in this case. *See Lutz v. Protective Life Ins. Co.*, 328 F. Supp. 2d 1350, 1354-55 (S.D. Fla. 2004) ("Defendant contends that, because Plaintiff is entitled to receive up to $2,000,000 in benefits for medical claims under the plan, the $2,000,000 should be considered when determining the amount in controversy. However, the cases Defendant cites in support of this proposition are inapposite. In each of the cases, the validity of the insurance policy itself was at issue, while here Plaintiff's claims involve the excess amount of premiums charged.").

In sum, the Court concludes that there is no diversity jurisdiction over Counts II, IV, VI, and VII because those claims are all state law claims and Albert has not met his burden to show the amount in controversy requirement is met.

26

**E.    Albert's Remaining Arguments Lack Merit**

Albert makes several other piecemeal arguments in connection with the pending motions.  First, Albert argues that GEICO and its counsel's conduct in seeking dismissal in *Albert I* and in this action is sanctionable and constitutes an abuse of the litigation process.  (*E.g.*, Dkt. No. 29 at 30 ("GEICO/[counsel's] penchant for filing meaningless motions to dismiss on the basis of, and presenting insufficient, unsubstantiated defenses may be curtailed by this Court by appropriate sanctions under its inherent powers.") (citation omitted).)  The Court finds no basis for sanctions against and no abuse of the litigation process by GEICO or its counsel.  On the contrary, GEICO's and its counsel's arguments were found meritorious in *Albert I* and again by the Court in this action.

Albert also argues that GEICO's counsel had an improper "ex parte consultation with Court staff" in connection with a letter filed by GEICO in January 2018 opposing Albert's application for *in forma pauperis* status.  (Dkt. No. 35 at 1.)  This District's CM/ECF procedures require a party to obtain permission to file a letter with the Court except when otherwise provided in the Local Rules, and there is nothing in the record that indicates the consultation GEICO's attorneys had with "Court staff" went beyond obtaining permission to file the letter.  (*See* Dkt. No. 3 at 1 ("Although not specifically provided for by the rules, after consulting with Court staff I file this correspondence in objection to Plaintiff Kallys Albert's Application to Proceed in Forma Pauperis (ECF doc. no. 2) on behalf of Defendant GEICO.").)  Indeed, GEICO's attorneys asked the Court to "strike or disregard" the letter if the Court believed it was improper.  (*Id.*)  Albert previously raised his concerns regarding GEICO's letter in connection with a

motion for recusal (Dkt. No. 8), and Magistrate Judge Steven E. Rau denied the motion

and granted Albert *in forma pauperis* status.[17]  (*Id.*; Dkt. No. 11.)  The Court sees no

reason to disturb the conclusion of Judge Rau that GEICO's conduct in obtaining

permission to file the January 2018 letter was not improper.

Finally, Albert argues that GEICO acted improperly and should be sanctioned

because GEICO referenced (or as Albert puts it, "exhumed") a 2012 R&R issued by

Judge Rau describing Albert's litigation history in this District.  (Dkt. No. 35 at 15 (citing

Dkt. No. 3 at 3 (quoting *Ikechi v. Verizon Wireless,* No. CIV. 10-4554 JNE/SER, 2012

WL 3079254, at *3 (D. Minn. July 6, 2012), *R&R adopted sub nom. Albert v. Verizon*

*Wireless,* No. CIV. 10-4554 JNE/SER, 2012 WL 3079072 (D. Minn. July 30, 2012)).)

The Court finds nothing sanctionable in GEICO's quotation of a public R&R issued by

this Court, or in GEICO's quotation of or reference to other public R&Rs, orders, or

decisions issued by courts in this District or elsewhere.

## F.    The Claims Against John Doe Should Be Dismissed

Albert also named "John Doe" as a defendant.  (Dkt. No. 1 at 2.)  The Complaint

does not make any specific allegations as to Doe.  (*See generally id.*)  Because the Court

recommends dismissing all claims against GEICO, and there are no factual allegations

relating to John Doe, the Court recommends dismissing all claims against John Doe

without prejudice.  *See Kieffer v. Tundra Storage LLC*, 14-CV-3192 (WMW/LIB), 2017

WL 1194194, at *1 (D. Minn. Mar. 30, 2017) ("Plaintiff makes no factual allegations as

---

[17]    Several months later, this case was re-assigned from Judge Rau to the
undersigned.  (Dkt. No. 43.)

to Does 1 to 10 independent of his allegations pertaining to other defendants that have already been or are now dismissed.  For these reasons, dismissal without prejudice of Plaintiff's complaint as to Does 1 to 10 is warranted.") (citing *Estate of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *Gold Star Taxi & Transp. Serv. v. Mall of Am. Co.*, 987 F. Supp. 741, 753 (D. Minn. 1997)).

* * *

In sum, the Court recommends denial of Albert's motion to strike and recommends dismissal of the Complaint for lack of subject matter jurisdiction and failure to state a claim.  GEICO asks the Court to dismiss the Complaint with prejudice. However, because the Court has not reached the merits of the contract issues in this action and because Albert had not previously asserted the § 1981 claims, the Court recommends dismissal without prejudice.

## IV.   <u>RECOMMENDATION</u>

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1. Defendant GEICO's Motion to Dismiss (Dkt. No. 16) be **GRANTED**;

2. Plaintiff's § 1981 claims (Counts I and II) be **DISMISSED WITHOUT PREJUDICE**;

3. Plaintiff's remaining state law claims (Counts III, IV, VI, and VII) be **DISMISSED WITHOUT PREJUDICE**;

4. Plaintiff's Complaint be **DISMISSED WITHOUT PREJUDICE**; and

5. Plaintiff's Motion to Strike (Dkt. No. 33) be **DENIED**.

29

DATED: January 16, 2019                    _s/Elizabeth Cowan Wright_
                                           ELIZABETH COWAN WRIGHT
                                           United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).